UNITED STATES, Appellee,

v.

Private First Class Michael A. WHITE-
HOUSE, SSN 245–88–4889, United
States Army, Appellant.

SPCM 16651.

U. S. Army Court of Military Review.

30 July 1982.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Robert C. Rhodes, JAGC, Captain John Lukjanowicz, JAGC, and Captain Chuck A. Pardue, JAGC, were on the pleadings for the appellant.

Colonel R.R. Boller, JAGC, Major John T. Edwards, JAGC, Major Rexford T. Bragaw, III, JAGC, and Captain Eugene R. Milhizer, JAGC, were on the pleadings for the appellee.

Before MILLER, KUCERA and BADAMI, Appellate Military Judges.

## OPINION OF THE COURT

MILLER, Senior Judge:

The question presented in this case is whether the Fifth Amendment requires suppression of a custodial statement which was obtained after the appellant had invoked his right to consult with counsel before further interrogation.

### I

Overcome by despair brought on by the use of drugs and the loneliness of being far from family and friends during the Christmas holidays, the appellant enlisted the aid of another soldier, one Private Meagher, "to shoot him ... [t]o help him out of the service." The accomplice initially balked at the idea but finally agreed and with a 380 automatic Sterling Arms pistol he shot the appellant once in the knee. The appellant was transported to the hospital for treatment.

Appellant was later interviewed on that date, 27 December 1980, by Special Agent Janet Finkenbinder of the Fort Sill Criminal Investigation Division (CID). Initially, Agent Finkenbinder considered appellant to be a victim of a sniper attack and not a suspect. It was not until 27 January 1981, after she began to suspect that the wound was self-inflicted, that she had the appellant brought to the CID office. There he was advised of his Article 31, Uniform Code of Military Justice, and Miranda-Tempia[1] rights and informed he was suspected of malingering. Appellant refused to answer any questions and asserted his right to counsel. The interview was terminated and appellant was permitted to return to his barracks.

■ Agent Finkenbinder had also spoken with appellant's roommate, Specialist Four Nelson, on several occasions asking that if Nelson learned of any information that he contact her.[2] Nelson subsequently spoke with his roommate concerning the shooting. Using the common bond of their religion, Nelson convinced the appellant at one point to again speak to Agent Finkenbinder and make a clean breast of things. However, for reasons not entirely clear in the record, this never came to pass.

On 9 February 1981 appellant's unit commander, Captain Robert Petrone, summoned the appellant into his office in order to conduct an interview on appellant's role in the shooting. While Finkenbinder had generally kept Petrone informed of the progress of the investigation, she had not suggested to Captain Petrone that he interview the appellant. Captain Petrone was also unaware that appellant had earlier requested counsel. After a proper rights' ad-

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Tempia,* 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967).

2. The character of Finkenbinder's remarks was disputed by Nelson at trial. Nelson testified that he was directed by Finkenbinder to get information on "what really did happen." Nelson further testified that he was encouraged to use the common bond of religion as a technique of getting the truth from the appellant. The trial court concluded that "Nelson was acting on behalf of the CID." On the contrary we find

that Nelson was not officially acting on behalf of the authorities such that his actions are attributable to Agent Finkenbinder. *See United States v. Duga,* 10 M.J. 206, 211 (C.M.A. 1981). In any event no claim has been or could be made that the appellant's conversations with Nelson were unlawfully coerced and for that reason it is clear that no right protected by the fifth amendment was violated. *See Hoffa v. United States,* 385 U.S. 293, 303–304, 87 S.Ct. 408, 414, 17 L.Ed.2d 374 (1966); *cf. Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977).

visement which included the right to remain silent and have counsel present, the appellant waived those same rights and executed a sworn statement. In this statement the appellant admitted asking Meagher to shoot him. At trial it was admitted into evidence over the appellant's strenuous objection and, in part, was the basis for his conviction of malingering.[3] It is now the subject of this appeal.

## II

In *Edwards v. Arizona,* 451 U.S. 477, 484–485, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981), the Supreme Court determined that the Fifth Amendment's prohibition against compelled self-incrimination required that when an accused has invoked his right to have counsel present during custodial interrogation, questioning must cease "until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."

■ In the present case the parties are in agreement that on 27 January 1981 when the appellant was informed of his *Miranda-Tempia* rights by Agent Finkenbinder, he invoked his right to counsel. It is also uncontested that on 9 February 1981, Captain Petrone initiated the questioning.[4]

■ At issue, therefore, is whether counsel was "made available" to the appellant in the interim period between the invocation of his right to counsel and the subsequent custodial questioning by Captain Petrone. In resolving this issue we must first define what is meant by the phrase "until counsel has been made available to him."

In *Edwards v. Arizona, supra* at 485, 101 S.Ct. at 1885, the Court observed that *Miranda* required that once the right to counsel was asserted, interrogation must cease "until an attorney was present." Again, *quoting Rhode Island v. Innis,* 446 U.S. 291, 298, 100 S.Ct. 1682, 1688, 64 L.Ed.2d 297 (1980), the Court referred to the *Miranda* right to remain silent and to be free of interrogation "until [an accused] had consulted with a lawyer." These references in the opinion might suggest that once an accused has requested counsel, he may never change his mind and decide to speak to the authorities until he has actually talked with counsel.[5]

■ We do not, however, construe *Edwards v. Arizona* so narrowly. Instead, we believe that the obligation that counsel be "made available" requires only that the accused must be provided a "reasonable opportunity" to consult with counsel. The concern of the Court in *Edwards* was to insure that the waiver of the right to counsel be not only voluntary but that it constitute a knowing and intelligent relinquishment of a known right or privilege. *Edwards, supra* at 482, 101 S.Ct. at 1883. *See Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *North Carolina v. Butler,* 441 U.S. 369, 374–375, 99 S.Ct. 1755, 1758, 60 L.Ed.2d 286 (1979); *Fare v. Michael C.,* 442 U.S. 707, 724–725, 99 S.Ct. 2560, 2571, 61 L.Ed.2d 197 (1979). This interest is adequately protected by affording the accused the opportunity to seek counsel and exercise his prerogative

---

**3.** A violation of Article 115, Uniform Code of Military Justice 10 U.S.C. § 915 (1976). The appellant was sentenced to a bad-conduct discharge, three months confinement at hard labor, forfeiture of $334.00 per month for three months and reduction to Private E–1.

**4.** It is beyond dispute that when the appellant was summoned by Captain Petrone for questioning, he was significantly deprived of his freedom of action such that he was not free to walk away. Moreover, it is apparent that Captain Petrone in his capacity as commander was engaged in the law enforcement function of detecting crime and ferreting out those responsible. We conclude there was custodial inter-

rogation in this case. *United States v. Tempia, supra,* n. 1.

**5.** To the contrary, *Miranda* itself requires only that when an attorney is requested "the individual must have the *opportunity* to confer with the attorney and have him present during any subsequent questioning." *Miranda v. Arizona,* 384 U.S. 436, 474, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1965) (emphasis added). Elsewhere in *Edwards v. Arizona,* 451 U.S. 477, 485 and 487, 101 S.Ct. 1880, 1885 and 1886, 68 L.Ed.2d 378 the Court merely refers to the accused having "access" to counsel.

as to whether he wishes to exercise his right to remain silent or to speak with the authorities. To hold that more is necessary would be to "imprison a man in his privileges," *Adams v. United States ex rel. McCann,* 317 U.S. 269, 280, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942); *see also Moore v. Michigan,* 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957), and deprive an accused of the right of free choice the Court sought to protect.[6]

Turning to the facts in the present case it is undisputed that when the appellant initially asserted his right to counsel all questioning was terminated and the appellant was permitted to return to his barracks. During the period 27 January through 9 February the appellant was free to seek out and consult with counsel. Through reasons of his own he voluntarily chose not to exercise that right. We conclude that the rule of *Edwards v. Arizona* was not violated when Captain Petrone summoned the appellant into his office.[7]

▉ We are then confronted with the question of whether the appellant's waiver of his rights was a voluntary, knowing, and intelligent relinquishment, "a matter which depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Edwards v. Arizona, supra* at 482, 101 S.Ct. at 1883, *quoting Johnson v. Zerbst,* 304 U.S. at 464, 58 S.Ct. at 1023 (other citations omitted).

At the meeting with Captain Petrone on 9 February, the appellant was again advised of his *Miranda* rights. Specifically, he was informed that he had a right to consult with counsel before questioning or have a lawyer present during questioning. Appellant specifically waived his right to counsel and agreed to talk. What prompted the accused's action is open to conjecture. The appellant argues that the "CID enlisted a close friend to appeal to his religious convictions." He further argues that this, along with the "ordering of appellant to the commander's office," indicates that the appellant was subjected to a coercive atmosphere that finally overbore his will.

▉ Assuming that Nelson is to be believed, we do not believe that Nelson's appeal to appellant's religious beliefs in a noncustodial setting rises to the level of such influence so as to deprive the appellant of the opportunity to independently make an informed and intelligent assessment of his interests. With regard to appellant's latter assertion, it is undisputed that Captain Petrone employed no badgering, pressure, or coercion and that the appellant's waiver was explicit, clear, and unequivocal. We decline to adopt the appellant's suggestion that a mere commander-subordinate relationship renders a rights warning meaningless. We conclude, as did the military judge below, that the appellant voluntarily, knowingly, and intelligently waived his right to counsel and right to remain silent. Accordingly, the statement was properly admitted into evidence.

The findings of guilty and the sentence are affirmed.

Judge KUCERA and Judge BADAMI concur.

---

**6.** As the Court observed in *Michigan v. Mosley,* 423 U.S. 96, 102, 96 S.Ct. 321, 325, 46 L.Ed.2d 313 (1975), "[a] blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police-investigation activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests."

**7.** We need not decide whether *Edwards v. Arizona* is inapposite. Nevertheless, we observe that chasmal factual distinctions separate that case from the one at bar. In *Edwards* the accused was kept in continuous confinement following invocation of his right to counsel and preceding his reinterrogation. Moreover, the accused was requestioned by the same police authorities in an obvious attempt to wear down his resistance by "repeated rounds of questioning to undermine the will of the person being questioned." *Michigan v. Mosley, supra* note 6, at 102, 96 S.Ct. at 325; *United States v. Muldoon,* 10 M.J. 254, 257 (C.M.A. 1981).