UNITED STATES, Appellee,

v.

Pernell APPLEWHITE, Sergeant U.S. Army, Appellant.

No. 52590.

CM 446544.

U.S. Court of Military Appeals.

Jan. 12, 1987.

For appellant: *Captain Annamary Sullivan* (argued); *Colonel Brooks B. La Grua, Lieutenant Colonel Paul J. Luedtke, Major Eric T. Franzen* (on brief).

For appellee: *Captain George R. Gillette* (argued); *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Major Byron J. Braun, Captain Jan M. Wamsted* (on brief).

*Opinion of the Court*

COX, Judge:

Appellant was tried by general court-martial at Fort Clayton, Panama, during June, July, and August 1984. Contrary to his pleas, he was convicted by a military judge sitting alone of rape, forcible sodomy, and committing indecent acts, in violation of Articles 120, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 925, and 934, respectively. His sentence to confinement for 10 years, total forfeitures, reduction to E–1, and a dishonorable discharge was approved by the convening au-

thority. The Court of Military Review affirmed. 20 M.J. 617 (1985).

We granted review to decide this issue: WHETHER THE MILITARY JUDGE ERRED IN ADMITTING THE APPELLANT'S STATEMENT OF 30 APRIL. We hold that the statement obtained on April 30, 1984, was erroneously admitted into evidence in violation of appellant's duly exercised right to counsel at a custodial interrogation.

Appellant was charged with and convicted of raping and sodomizing Daisy R on February 19, 1984, and committing an indecent act with Almida Y on April 12, 1984. Appellant first became a suspect after the incident involving Almida Y. During the early morning hours of April 12, Almida Y reported that she had been raped by two soldiers at the Empire Range Training Area, Panama. Appellant was apprehended that same morning based on her description. He was informed that he was suspected of rape and adultery with Almida Y and properly advised of his rights. Appellant waived his rights and made a statement to a Criminal Investigation Division (CID) agent in which he admitted only that he engaged in a consensual sex act with Almida Y. This incident was eventually tried as the indecent-act offense.

On April 25, 1984, CID Special Agent Albert Bernardi called appellant to his office and advised him of his rights, informing appellant, who was married, that he was suspected of committing the offense of adultery with Almida Y. Appellant asked if Bernardi were kidding and stated that he wanted a lawyer. Agent Bernardi then asked appellant if he would consent to a polygraph examination concerning the alleged rape. Appellant agreed.

On April 30, appellant reported to the CID office to take the polygraph exam. The polygraph examiner, Special Agent Gary Light, was aware that appellant had previously invoked his rights in regard to the offense of adultery with Almida Y. He advised appellant of his rights anew, informing him he was suspected of raping and sodomizing Daisy R, in addition to the offense of raping Almida Y. Appellant had not been interviewed previously regarding the Daisy R incident, as he had not become a suspect in those offenses until sometime after April 25.

Appellant waived his rights and made inculpatory admissions to Agent Light concerning both incidents. Apparently because appellant made those admissions, Agent Light never administered a polygraph examination. After Agent Light concluded his interview, he called in the agent assigned to the Daisy R case, Special Agent Jaime Davila. This agent had appellant tell his story again and reduce it to writing. Then, Agent Bernardi came in and took appellant's statement regarding the Almida Y incident. During this interview, appellant once more invoked his right to counsel. On May 2, for the first time, appellant actually consulted a lawyer.

At trial, the defense moved to suppress all statements made on April 30, contending that appellant should not have been reinterviewed after he invoked his right to counsel on April 25.[1] The military judge granted the motion in part, finding that the offense of adultery, on which appellant invoked his right to counsel, was included in the offense of rape and "there is no way that these offenses could be dealt with separately from a factual standpoint in an interview." He further found that "[t]he offer of the polygraph examination made on the 25th of April constituted an effort to get the accused to waive his right to counsel after the right was invoked." He suppressed the statement regarding the Almida Y incident, but admitted the statement regarding the Daisy R incident. Consequently, it is the admission of the April 30 statement on the Daisy R incident that is now in issue.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court imposed a mandatory

---

1. The defense also contended at trial that appellant's statements were induced by coercive techniques employed by the investigators. This argument has not been pursued at this Court.

procedure to be followed by the police as a prerequisite to admissibility of any statement obtained during custodial interrogation. The suspect

> must be warned ... that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.[2]

*Id.* 384 U.S. at 479, 86 S.Ct. at 1630. These warnings were considered necessary to secure the fifth-amendment privilege against self-incrimination in the coercive atmosphere of custodial interrogation. Because *Miranda* is applicable to military interrogations, servicemembers have the right, upon request, to appointment and presence of an attorney at custodial interrogations. *United States v. Tempia,* 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967). *See* Mil.R.Evid. 305(d), Manual for Courts-Martial, United States, 1969 (Revised edition), and Manual for Courts-Martial, United States, 1984.

To settle the issue of when law-enforcement authorities can resume questioning after an accused asserts his right to counsel after being advised of his *Miranda* rights, the Supreme Court announced a prophylactic rule in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), to wit:

> [W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused

> himself initiates further communication, exchanges, or conversations with the police.

451 U.S. at 484–85, 101 S.Ct. at 1884–85 (footnote omitted).

The bright-line rule of *Edwards* also applies to military interrogations. *United States v. Harris,* 19 M.J. 331 (C.M.A. 1985); *see also* 21 M.J. 173 (C.M.A. 1985). Although recognizing the applicability of *Edwards* in the military context, the court below found it was inapplicable under the facts of this case. We disagree.

As all parties at trial and on appeal have treated the interrogation conducted on April 25 as a custodial interrogation for purposes of *Miranda,* we will proceed on that premise. Clearly, during interrogation on April 25, appellant unambiguously invoked his right to counsel. *See Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). Rather than immediately ceasing all interrogation as the law requires, however, Agent Bernardi asked appellant to submit to further interrogation in the form of a polygraph examination. *Cf. Wyrick v. Fields,* 459 U.S. 42, 47, 103 S.Ct. 394, 396, 74 L.Ed.2d 214 (1982) ("By requesting a polygraph examination, he initiated interrogation."). Whether Agent Bernardi's request is viewed as a continuation or initiation of interrogation, it effectively undermined appellant's decision to consult an attorney. As appellant merely acquiesced in, rather than initiated, further interrogation, no waiver of the previously invoked right to counsel can be established. *See Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983).

Because appellant was interrogated on April 30 regarding not only offenses about which he had invoked the right to counsel, but other offenses as well, the Government urges us to apply the principle of *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), to the statements obtained concerning the Daisy R offenses. In *Mosley,* the Supreme Court found that

---

2. Mil.R.Evid. 305(d)(2) states that counsel will be provided "without regard to the person's indi-   gency or lack thereof."

*Miranda* protections did not prohibit investigators from resuming interrogation on an unrelated offense (homicide) after an accused had invoked the right to silence on another suspected offense (burglary), under circumstances where the " 'right to cut off questioning' was 'scrupulously honored.' " 423 U.S. at 104, 96 S.Ct. at 326 (footnote omitted).[3] Unlike the present case, however, the police immediately ceased interrogation when Mosley asserted his right to silence. Questioning was resumed a few hours later by different investigators who "focused exclusively" on a crime which had not been the subject of the earlier interrogation.

■ On this record, we certainly cannot conclude that appellant's rights were "scrupulously honored." After appellant invoked his right to counsel, the investigator sought to circumvent the exercise of that right by requesting appellant to take a polygraph examination. Furthermore, the interrogation of April 30 was not restricted to a separate unrelated incident. The polygraph examiner discussed the two incidents together before he turned appellant over to the other agents for further interrogation.

■ Taking a different tack, the Government contends that the *Edwards* rule was not violated because appellant, who was not in continuous custody, had a reasonable opportunity to obtain counsel during the 5 days between assertion of the right to counsel and the interrogation of April 30, *citing United States v. Whitehouse,* 14

M.J. 643 (A.C.M.R. 1982). *See United States v. Skinner,* 667 F.2d 1306 (9th Cir. 1982), *cert. denied,* 463 U.S. 1229, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983); *United States v. Halliday,* 658 F.2d 1103 (6th Cir.), *cert. denied,* 454 U.S. 1127, 102 S.Ct. 978, 71 L.Ed.2d 115 (1981); *Brown v. State,* 661 P.2d 1024 (Wyo. 1983). In *Whitehouse,* the Court of Military Review determined that the *Edwards* requirement "that counsel be 'made available' " upon request is met by giving an accused "a 'reasonable opportunity' to consult with counsel." *Id.* at 645. This rationale, of course, would be equally applicable to all statements obtained on April 30. The military judge heard evidence on the operation of the local Trial Defense Service and found that resumption of interrogation "three working days" after invocation of the right to counsel was violative of appellant's rights. We agree. The polygraph interview was initiated solely by the CID agent in blatant disregard of *Miranda* and *Edwards.* Appellant's acquiescence in that interview was already a *fait accompli* when appellant left the CID office. Thus, it cannot be said that appellant's failure to contact a lawyer during the 5 days between interrogations was unreasonable or indicative of a voluntary decision to forego the right to counsel previously invoked.

■ After careful review of the evidence, we do not find the erroneous admission of the statements concerning the Daisy R offenses was harmless beyond a rea-

---

**3.** In *Michigan v. Mosley,* 423 U.S. 96, 104 n. 10, 96 S.Ct. 321, 326 n. 10, 46 L.Ed.2d 313 (1975), the Supreme Court noted that *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), "distinguished between the procedural safeguards triggered by a request to remain silent and a request for an attorney." Justice White, in his concurring opinion in *Mosley,* explained:

The question of the proper procedure following expression by an individual of his desire to consult counsel is not presented in this case. It is sufficient to note that the reasons to keep the lines of communication between the authorities and the accused open when the accused has chosen to make his own decisions are not present when he indicates instead that he wishes legal advice with respect thereto.

The authorities may then communicate with him through an attorney. More to the point, the accused having expressed his own view that he is not competent to deal with the authorities without legal advice, a later decision at the authorities' insistence to make a statement without counsel's presence may properly be viewed with skepticism.

423 U.S. at 110 n. 2, 96 S.Ct. at 329 n. 2. Because of the different considerations flowing from these rights, we are not convinced that *Mosley* is applicable when the right to counsel is invoked. *See State v. Routhier,* 137 Ariz. 90, 669 P.2d 68 (1983); *Radovsky v. State,* 296 Md. 386, 464 A.2d 239 (1983); *State v. Taylor,* 56 Or.App. 703, 643 P.2d 379 (1982). *But see McFadden v. Commonwealth,* 225 Va. 103, 300 S.E.2d 924 (1983).

sonable doubt. *United States v. Remai,* 19 M.J. 229 (C.M.A. 1985).

The decision of the United States Army Court of Military Review is reversed as to Charges I and II and their specifications and the sentence. The findings of guilty thereon are set aside. The record of trial is returned to the Judge Advocate General of the Army for remand to that court, which may dismiss the affected charges and reassess the sentence based on the remaining findings of guilty; or set aside the sentence and order a rehearing on the affected charges and the sentence.

Chief Judge EVERETT concurs.

Judge SULLIVAN did not participate.