**UNITED STATES, Appellee,**

v.

**Private First Class James R. GRANDA,
490–70–2755, United States
Army, Appellant.**

**ACMR 8801488.**

U.S. Army Court of Military Review.

31 Oct. 1989.

For Appellant: Major Marion E. Winter, JAGC, Captain Pamela J. Dominisse, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Gary L. Hausken, JAGC, Captain Jonathan F. Potter, JAGC (on brief).

Before DeFORD, KANE and WERNER, Appellate Military Judges.

### OPINION OF THE COURT

WERNER, Judge:

Pursuant to his pleas, the appellant was convicted of two specifications of wrongful use of cocaine, two specifications of wrongful use and distribution of cocaine and one specification of wrongful introduction of cocaine onto a military installation, all violative of Article 112a of the Uniform Code of Military Justice, 10 U.S.C. § 912a (Supp. 1983). His approved sentence includes a bad-conduct discharge, confinement for twelve months, forfeiture of all pay and allowances, and reduction to Private E1.

The appellant entered conditional pleas of guilty pursuant to R.C.M. 910(a)(2)[1] in order to preserve a motion to suppress certain incriminating statements allegedly obtained in violation of the rule of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The military judge denied the motion.[2] On appeal, the

---

1. RCM 910(a)(2) provides in relevant part: With the approval of the military judge and the consent of the Government, an accused may enter a conditional plea of guilty, reserving in writing the right, on further review or appeal, to review of the adverse determination of any specified pretrial motion. If the accused prevails on further review or appeal, the accused shall be allowed to withdraw the plea of guilty.

2. In making his determination, the judge stated:

The motion is denied. Just a few brief findings of fact with respect to the motion. I find that on 25 April, of course, the accused was properly advised of his rights to an attorney, and stated at that time that he did not want to make a statement. That seems to be uncontested. I find it's fact, that on 6 May 1988, the accused was required to return to the CID office, where he was again questioned. And I find it's fact that, that was not obviously initiated by the accused. Or it's obvious to me,

appellant again relies upon *Edwards* in asserting that the military judge erred in denying his motion to suppress. The appellant argues that he was induced to incriminate himself during a reinterrogation initiated by the investigator after appellant's request for counsel at an earlier custodial interrogation had not been honored. The government maintains that because the appellant was given the opportunity to obtain counsel during an eleven day period between the two interrogations, counsel had been made available within the meaning of *Edwards*. It asserts that the appellant's decision to make a statement after failing to take advantage of the opportunity to obtain counsel establishes that his statements were voluntary under the rationale of *United States v. Whitehouse*, 14 M.J. 643 (A.C.M.R.1982). We find that the military judge erred in failing to suppress the appellant's statement.

I

On 25 April 1988, at Fort Devens, Massachusetts, agents from the Criminal Investigation Division (CID) apprehended the appellant and four other soldiers on suspicion of illicit use and distribution of cocaine. One of the agents, Mr. Marchant, advised appellant of his constitutional and codal rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Article 31, UCMJ, 10 U.S.C. § 831. The appellant invoked both the right to remain silent and the right to counsel. As required by law, Mr. Marchant immediately terminated the interrogation. Mr. Marchant advised the appellant that

there might be some delay before counsel would be available because there was only one defense counsel at the installation and he could represent only one of the suspects. Shortly thereafter, the appellant was released from custody.

On 6 May 1988, Mr. Seguin, the CID agent-in-charge of the Fort Devens drug suppression team, called appellant's commander and "requested" that he send the appellant to the CID office. He testified that he knew appellant had previously invoked his rights but that his purpose in interviewing appellant was "to find out who his attorney was." He said CID procedures required him to accomplish this "face to face". However, on cross-examination Mr. Seguin admitted his request was also motivated by a statement from another suspect that "the accused had been trafficked [sic] in narcotics." This agent also testified that one suspect had informed him that all of the suspects had sought counsel but had been told that defense counsel would have to be brought in from another installation. Nevertheless, he testified that he hoped that the appellant had seen counsel "so I could reinterview him."

When the appellant arrived at the CID office, Mr. Seguin began the interrogation by asking him, "Have you received your lawyer yet?" Appellant answered, "No, but I'm willing to talk to you." Appellant then executed a form purporting to waive his previously asserted rights and proceeded to incriminate himself. With respect to whether military counsel was reasonably available to the appellant, Captain H., the

anyway, that it wasn't initiated by the accused, but rather, it was initiated by the Government agents. And I find it's fact that the first question I asked of the accused was—or in this case—was suspect at the time there, [sic] of course was, if he had a lawyer; and of course the interrogator knew that he had, prior to that time, on 25 April, indicated that he did want to see an attorney; he was asked if he had a lawyer. And I find it's fact that he—his response was that he did not have a lawyer, but that he wanted to make a statement. I further find that the 11 days between the period of time when the accused was advised of his rights and the period of time when he subsequently made a statement, was a reasonable period of time for the accused to

obtain a lawyer. And further, that the accused, in fact had a reasonable time to seek counsel and failed to do so. Availability of counsel is the issue. And I find it's fact that counsel was available to the accused, was reasonably available to the accused in this case, and that he failed to take advantage of that. Therefore, I find that the statement was not taken in violation of the accused's rights, and would have been admissible.

Upon inquiry by the defense counsel, the judge clarified his factual findings by adding, "What I meant to say was, that on 25 April he was properly advised of his rights and indicated that he did not want to make a statement, but that he did want to see an attorney."

Senior Defense Counsel (and the only defense counsel) assigned to the Army Trial Defense Service (TDS) stationed at Fort Devens, testified that he was familiar with the facts of appellant's case and was representing one of appellant's co-accused. He testified that, because he had established an attorney-client relationship with a coaccused, the Standing Operating Procedures of the Trial Defense Service prohibited him from consulting with any other coaccused lest he form another attorney-client relationship and subsequently be disqualified from representing either.

In order to avoid the "appearance of impropriety" and disqualification, the Senior Defense Counsel refused to see anyone "without paperwork." To this end the Senior Defense Counsel had instructed his clerk to "screen" individuals seeking counsel. He testified that he would "give" investigators "just a little bit of time, a week or so" to prepare paperwork, apparently a report of investigation. "[I]f that didn't happen I would go and see somebody and—you know—figure out who the investigator was, and get the facts, which is what I ended up doing" in the case at bar. The Senior Defense Counsel could not specifically recall the date on which he interviewed the investigator.

One coaccused, whom the Senior Defense Counsel was unable to identify, was, by some means, able to obtain an audience with the Senior Defense Counsel. However, he recalled only that he advised this individual:

> I can't pretend to give you legal advice right now. I don't want you to be under the impression ... that I'm forming an attorney-client relationship with you.

　　.　　　.　　　.　　　.　　　.

I did tell him, however, that it's not a good idea to talk....[3]

The Senior Defense Counsel could not exclude the possibility that it was the appellant who had been so advised. An appointments logbook maintained in the TDS office did not reveal appellant's name to evidence his having seen Captain H; however, this logbook could not foreclose that possibility either.

The Senior Defense Counsel testified that he did not contact the Regional Defense Counsel and request additional defense counsel for the coaccuseds in this case until after 6 May.[4] He further testified that, had any individual insisted on counsel before that time, he would have had to call the Regional Defense Counsel because he was "a little bit confused as to what to do next."[5] Even so, he would have told that individual "very clearly, I'm not your lawyer."

## II

### A

In *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court created a bright-line, *per se* test for determining the validity of a purported waiver of the Fifth Amendment right to counsel once it has been invoked. *Solem v. Stumes,* 465 U.S. 638, 646, 647, 104 S.Ct. 1338, 1343, 1344, 79 L.Ed.2d 579 (1984); *see also Oregon v. Bradshaw,* 462 U.S. 1039, 1047, 103 S.Ct. 2830, 2835–2836, 77 L.Ed.2d 405 (1983).

> [I]f the accused invoked his right to counsel, *courts may admit his responses to further questioning only on finding that he* (a) *initiated further discus-*

---

3. The Senior Defense Counsel testified that his usual practice included advice that:

   I don't know what is happening here, that when I get something in writing from the Government, you will be provided a lawyer. But that point certainly hasn't occurred yet. That I can't represent everybody here, much as I would like to be able to help everybody out in some way. But at some point in the future, and I really didn't know when—you know—he would get a lawyer.

4. According to his testimony, he does not request additional defense counsel from the Regional Defense Counsel until he has "whatever paperwork is available or ... until I know something, I get something from the Government" in any case in which there is a possibility that a case may involve multiple accused.

5. At one point, the Senior Defense Counsel testified that the Trial Defense Service "can't give out-of-town counsel until we get something a little more concrete, specifically charge sheets."

*sions with the police* and (b) knowingly and intelligently waived the right he had invoked.

*Smith v. Illinois,* 469 U.S. 91, 94–95, 105 S.Ct. 490, 492–493, 83 L.Ed.2d 488 (1984) (citations omitted; emphasis added). *See also Solem v. Stumes,* 465 U.S. at 646, 104 S.Ct. at 1343; *Edwards v. Arizona,* 451 U.S. at 486 n. 9, 101 S.Ct. at 1885 n. 9.

A purported waiver of the right to counsel, once invoked, is viewed with judicial skepticism in light of the individual's previous expression that he is not competent to deal with authorities without the assistance of counsel.[6] *Arizona v. Roberson,* 108 S.Ct. at 2098 (quoting *Michigan v. Mosley,* 423 U.S. at 110 n. 2, 96 S.Ct. at 329 n. 110 (White, J., concurring in result)). The "additional safeguard" erected in *Edwards* ensures that the waiver was voluntary and not the product of police badgering. *Edwards v. Arizona,* 451 U.S. at 484–485, 101 S.Ct. at 1884–1885. This safeguard simply requires a threshold proof of fact before a court applies the traditional *Zerbst* standard for determining valid waiver. *See Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). In effect, the Court created a presumption that, once a suspect has invoked his right

to counsel, "any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of 'inherently compelling pressures' and not the purely voluntary choice of the suspect."[7] *Arizona v. Roberson,* 108 S.Ct. at 2097–2098.

In the absence of proof that further communication has been initiated by the individual, the *Miranda* proscription remains: all interrogation must cease until counsel is present. *Edwards v. Arizona,* 451 U.S. at 484–485, 101 S.Ct. at 1884–1885; *Miranda v. Arizona,* 384 U.S. at 474, 86 S.Ct. at 1628. *See also Michigan v. Mosley,* 423 U.S. 96, 104 n. 10, 96 S.Ct. 321, 326 n. 10, 46 L.Ed.2d 313 (1975). Stated otherwise, "[A] preindictment suspect who, while being interrogated, asserts his Fifth Amendment right to counsel ... may not be questioned again unless he initiates the meeting." *Patterson v. Illinois,* 487 U.S. 285, 108 S.Ct. 2389, 2394, 101 L.Ed.2d 261 (1988). *Accord Moran v. Burbine,* 475 U.S. 412 at 423 n. 1, 106 S.Ct. 1135 at 1141 n. 1, 89 L.Ed.2d 410.

### B

The *Miranda* and *Edwards* rules are fully applicable to the armed forces.[8]

---

**6.** An invocation of the "right" to counsel embraced by the *Miranda* rights warnings is a expression by the suspect that "he is not capable of undergoing [custodial] interrogation without advice of counsel" and that he desires "to deal with police only through counsel." *Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 2097, 2098, 100 L.Ed.2d 704 (1988). *See also Patterson v. Illinois,* 487 U.S. 285, 108 S.Ct. 2389, 2394, 101 L.Ed.2d 261 (1988); *Smith v. Illinois,* 469 U.S. 91, 94–95, 105 S.Ct. 490, 492–493, 83 L.Ed.2d 488 (1984); *Edwards v. Arizona,* 451 U.S. at 484–485, 101 S.Ct. at 1884–1885.

  This "right" is accorded the greatest deference because"

  [T]he lawyer occupies a critical position in our legal system because of unique ability to protect the Fifth Amendment rights of a client undergoing custodial interrogation. Because of this special ability ..., the Court found [in *Miranda*] that "the right to have counsel present at the interrogation is indispensable...."

*Fare v. Michael C.,* 442 U.S. 707, 719, 99 S.Ct. 2560, 2568–2569, 61 L.Ed.2d 197 (1979) (citations omitted).

**7.** The Supreme Court has acknowledged that a subsequent waiver of the right to counsel could

be "knowing, voluntary, and intelligent even though it occurred when the police recommenced questioning after the accused had invoked the right to counsel." *Solem v. Stumes,* 465 U.S. at 648, 104 S.Ct. at 1344. The Court nevertheless declared that the rule would be rigidly applied because it "inform[ed] police and prosecutors with specificity as to what they may do on conducting custodial interrogation, and ... inform[ed] courts under what circumstances statements obtained during such interrogation are not admissible." *Arizona v. Roberson,* 108 S.Ct. at 2098. The Court in *Roberson* stated that the benefits gained in specificity outweighed the harsh results of their ruling. *Id.* We will not debate that point.

**8.** Judge Cox has criticized the rule as "inflexible" and particularly so in a military setting. *See United States v. Reeves,* 20 M.J. 234, 237 (C.M.A.1985) (Cox, J., concurring in the result). *See also United States v. Harris,* 19 M.J. at 342–343 (Cox, J., concurring in the result). This concern is not unfounded: the Supreme Court has itself acknowledged that the *Miranda* and *Edwards* rules are "only tangential" to the truth-finding process and may do little to enhance

*United States v. Tempia,* 37 C.M.R. 249 (C.M.A.1967) (*Miranda*); *United States v. Harris,* 19 M.J. 331 (C.M.A.1985) (*Edwards*).[9] Thus, once a suspect has invoked the right to counsel, all interrogation must cease until counsel is present, *Edwards v. Arizona,* 451 U.S. at 484–485, 101 S.Ct. at 1884–1885. Interrogation may continue in the absence of counsel only if the individual reinitiates conversation. *Solem v. Stumes,* 465 U.S. at 641, 104 S.Ct. at 1340. Otherwise, "a valid waiver of [the right to counsel] cannot be established by showing only that [the accused] responded to further police-initiated interrogation." *Edwards v. Arizona,* 451 U.S. at 484, 101 S.Ct. at 1885.

■ Turning to the facts of the case at bar, the military judge found as a matter of fact—and we agree—that the appellant invoked his right to counsel on 25 April 1988. The undisputed evidence demonstrates and the military judge found that appellant did not initiate the interrogation on 6 May. To the contrary, the appellant was ordered to report to the CID office by his commander at the request of Mr. Seguin, a government agent. The fact that the government agent and not the accused reinitiated interrogation in the absence of counsel raises a presumption that the waiver itself was

coerced. *Cf. Arizona v. Roberson,* 108 S.Ct. at 2098. Therefore, as a matter of law, the Government failed to establish a valid waiver of the Fifth Amendment right to counsel.[10] *Cf. Michigan v. Jackson,* 475 U.S. 625, 635, 106 S.Ct. 1404, 1410, 89 L.Ed.2d 631 (1986) ("written waivers are insufficient to justify police-initiated interrogations after the request for counsel in a Fifth Amendment analysis"). Therefore, the appellant's confession was inadmissible.

### III

The Government, relying on this court's decision in *United States v. Whitehouse,* 14 M.J. 643 (A.C.M.R.1982), nevertheless contends that it has established a valid waiver. In *Whitehouse* this court held that a valid waiver of a previously invoked right to counsel could be established by proof in part that an accused had been afforded the opportunity to consult with counsel. The court's decision in *Whitehouse* was, however, the product of confusion over the meaning of *Edwards*—confusion which it appears, also confounded the Supreme Court. *See generally Solem v. Stumes,* 465 U.S. at 462, 104 S.Ct. at 1341 (Powell, J., concurring in the judgement); *Oregon v. Bradshaw,* 462 U.S. at 1047, 103 S.Ct. at

that process. *Solem v. Stumes,* 465 U.S. 638, 643–644, 104 S.Ct. 1338, 1341–1342, 79 L.Ed.2d 579 (1984). As a consequence, the rules may require suppression of trustworthy and highly probative evidence even though the confession and waiver might be voluntary under traditional analyses. *See Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 2098, 100 L.Ed.2d 704 (1988). However, these rules are deliberately designed to be inflexible so that courts may dispense with the need to analyze the conduct of the authorities. *Arizona v. Roberson,* 108 S.Ct. at 2098.

9. The *Miranda* requirement is reflected in the mandate of Military Rule of Evidence 305 which provides that military counsel "shall be provided by the United States" when an individual in custody requests counsel "before the interrogation may proceed." Manual for Courts-Martial, United States, 1984, Mil.R.Evid. 305(d) [hereinafter Mil.R.Evid.].

Although the *Edwards* and *Bradshaw* decisions were available to the drafters of the 1984 Manual, the rules of evidence do not embrace the *Edwards* rule either as initially announced or as explained in the cases which followed.

*See* Mil.R.Evid. 305 and Manual for Courts-Martial, United States, 1984, Mil.R.Evid. 305(f) analysis at A22–15 (as originally promulgated by C1, 15 November 1984, and as amended by C2, 15 May 1986, and C3, 1 June 1987).

We further note that Mil.R.Evid. 305(g)(2) authorizes continued interrogation of an individual who is in fact represented by counsel in both the Fifth Amendment and Sixth Amendment contexts when efforts to notify counsel are unavailing or if counsel does not attend interrogation within a reasonable period of time even though an individual may in fact be represented by counsel. This rule purportedly applies in both the Fifth and Sixth Amendment context despite Supreme Court precedent to the contrary. *See Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986);

10. The military judge ruled that "availability of counsel [was] the issue" and concluded that, because counsel was available, the appellant's statement was not taken in violation of "the accused's rights." His ruling seems to have denied the appellant's motion on this basis. The real issue was, of course, whether the purported waiver of the right to counsel was valid.

2835–2836 (Powell, J., concurring in the judgment). Subsequent decisions, noted above, by the Supreme Court have clearly invalidated the rationale and interpretation which underpin the *Whitehouse* decision.[11] The *Edwards* rule has been declared a "bright-line," prophylactic rule which created a *per se* rule of admissibility. *See Solem v. Stumes*, 465 U.S. at 646–647, 104 S.Ct. at 1343–1344. Thus, despite the language of the *Edwards* rule as it was initially announced, the rule has now been clearly articulated: "[A] preindictment suspect who, while being interrogated, asserts his Fifth Amendment right to counsel ... may not be questioned again unless he initiates the meeting." *Patterson v. Illinois*, 487 U.S. 285, 108 S.Ct. 2389, 2394, 101 L.Ed.2d 261 (1988). *Accord Moran v. Burbine*, 475 U.S. at 423 n. 1, 106 S.Ct. at 1141 n. 1. *United States v. Fassler*, 29 M.J. 193 (C.M.A.1989).

We note, however, that several federal courts have fashioned a rule not dissimilar to that announced in *Whitehouse*, the so-called "break-in-custody" rule.[12] Whether such a rule might be recognized in military law is an issue for another case. The facts

of the case at bar do not require that we consider this issue.

## A

Arguably, police-initiated confrontations might not violate *Edwards* when authorities intend neither to reinterrogate the individual nor to secure a "waiver" of the previously invoked right to counsel. *But see United States v. Brabant*, 29 M.J. 259, 263 (C.M.A.1989). In this case, the Government relied upon regulatory procedures promulgated by the Criminal Investigation Division which "require" agents to conduct a "face-to-face" interview of suspects who have previously invoked their right to counsel. The purported purpose of this requirement is "to find out who his attorney is." This is accomplished by having the individual's superior order him to report to the CID office. Consequently, this face-to-face interview is a custodial interview. Although the Government represents this procedure as constitutionally innocuous, this requirement obviously treads perilously close to the precipice of police "badgering," the very focus of the *Edwards* rule.[13]

---

**11.** The Government cites several cases as supporting the *Whitehouse* exception: *United States v. Applewhite*, 23 M.J. 196 (C.M.A.1987); *United States v. Brabant*, 26 M.J. 899 (A.F.C.M.R.1988) *reversed*, 29 M.J. 259 (C.M.A.1989); and *United States v. Groh*, 24 M.J. 767 (A.F.C.M.R.1987). These cases do not, however, adopt the *Whitehouse* exception. *Applewhite* acknowledges the *Whitehouse* decision but finds it inapplicable to the facts of that case; *Applewhite* neither approves nor disapproves the exception. The Air Force Court's decision in *Brabant* suggests that an invocation of the right to counsel only requires that police "go away" for a reasonable time. *United States v. Brabant*, 26 M.J. at 902. This is a clear misstatement of the law. *See Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). In *Groh*, the Air Force Court of Military Review neither adopted nor relied upon the *Whitehouse* exception; rather, that court specifically held that the requirements for a valid waiver were the same as those set forth in *Smith v. Illinois* and found that the accused had initiated the conversation. *United States v. Groh*, 24 M.J. at 770.

**12.** *See, e.g., Dunkins v. Thigpen*, 854 F.2d 394 (11th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1329, 103 L.Ed.2d 597 (1989); *McFadden v. Garraghty*, 820 F.2d 654 (4th Cir.1987). *See also Espinoza v. Fairman*, 813 F.2d 117 (7th Cir.), *cert. denied*, 483 U.S. 1010, 107 S.Ct. 3240, 97

L.Ed.2d 745 (1987); *United States v. Skinner*, 667 F.2d 1306 (9th Cir.), *cert. denied*, 463 U.S. 1229, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983).

The break-in-custody rule is premised upon a variety of rationales, including: (1) the Fifth Amendment right to counsel, triggered solely by custody, does not survive a break in custody; (2) the validity of a waiver obtained during a subsequent period of custody is not measured under the *Edwards* standard because a break in custody dissipates the coercive effects of the initial period of custody; and (3) successive periods of custody are to be considered independently.

Although tacit support for such a rule may be found in *Westover v. United States*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court has never approved such an exception in the context of *Edwards*. Although the Court of Military Appeals has recognized the existence of the rule, that court has not had occasion to determine its validity. *See United States v. Applewhite*, 23 M.J. 196 (C.M.A.1987).

**13.** We also find the procedure suspect in light of the fact that appellant, like all similarly situated soldiers, was entitled as a matter of law to military counsel "provided by the United States." Consequently, the procedure which would seem most effective to determine whether a soldier had in fact seen counsel and the

In this case, we need not review the propriety of this procedure in the abstract because the government agent acted in bad faith. First, Mr. Seguin's purpose in reinterviewing the appellant was not motivated by the simple desire to determine whether the appellant had consulted with counsel and the identity of that counsel. Rather, he was motivated by a desire to reinterrogate the appellant. Second, the government agents at Fort Devens knew that military counsel would not be readily available to the appellant. The agent who obtained the incriminating statement admitted that he had knowledge that defense counsel were not available on post for all of the individuals who had invoked their right to counsel. We conclude that Mr. Seguin's actions were calculated to produce an incriminating response from appellant. As such, they were impermissible even though they were committed pursuant to authorized procedures. *See United States v. Lee,* 25 M.J. 457, 461 (C.M.A.1988).

**B**

There exists, however, an even more compelling reason for denying the Government an exception in this case: the appellant was not afforded the opportunity to consult with counsel notwithstanding the fact that he was released from government custody for a period of eleven days. The military judge found that counsel "had been made available" apparently because a hiatus of eleven days had elapsed between the date of appellant's release from custody and the subsequent reinterrogation. He found that such period of time was, in his opinion, reasonable, and that appellant had failed to take advantage of that opportunity.

Every soldier undergoing custodial interrogation is entitled to military counsel upon request. Mil.R.Evid. 305(d).[14] Moreover, Mil.R.Evid. 305(d) mandates that the Government provide military counsel at no expense and without regard to indigency.[15] In this case, the evidence of record establishes that counsel was not in fact available much less "made available." These factual circumstances are not unlike those of *United States v. Tempia, supra.* Moreover, the record does not establish that the appellant did not seek assistance of counsel or refute the possibility that he was discouraged from doing so by the futile experiences of others at the Fort Devens field office of the Trial Defense Service. The Government bears the burden of establishing a valid waiver by a preponderance of the evidence. Mil.R.Evid. 304(e)(1). It has not done so in this case.

Accordingly, the findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Senior Judge DeFORD and Judge KANE concur.

---

identity of that counsel is requiring a simple telephone call to the Trial Defense Service.

**14.** Paraphrased, that rule of evidence provides: When evidence of a testimonial or communicative nature ... is sought or is a reasonable consequence of an interrogation, an accused or a person suspected of on offense is entitled to consult with counsel ... [and] to have such counsel present at the interrogation ... if ... the accused or suspect is in custody, could reasonable believe himself or herself to be in custody, or is otherwise deprived of his or her freedom of action in any significant way.

**15.** Mil.R.Evid. 305(d)(2) provides: When a person entitled to counsel under this rule requests counsel, a judge advocate or an individual certified in accordance with Article

27(b) shall be provided by the United States at no expense to the person and without regard to the person's indigency or lack thereof before the interrogation may proceed. In addition to counsel supplied by the United States, the person may retain civilian counsel at no expense to the United States. Unless otherwise provided by regulations of the Secretary concerned, an accused or suspect does not have a right under this rule to have military counsel of his or her own selection.

Given the prescriptive language of this Rule, we question whether there can ever be such an "availability of counsel" exception where the police initiate the subsequent interrogation without counsel being present.