UNITED STATES, Appellee,

v.

**Tod A. SCHAKE, Specialist Four U.S. Army, Appellant.**

No. 62,355.
CM 8801034.

U.S. Court of Military Appeals.

Argued Dec. 13, 1989.
Decided Aug. 27, 1990.

For Appellant: *Captain Patricia D. White* (argued); *Colonel Robert B. Kirby and Lieutenant Colonel Russell S. Estey* (on brief); *Colonel John T. Edwards and Captain Brian D. Barley.*

For Appellee: *Captain James K. Reed* (argued); *Colonel Alfred F. Arquilla;*

Lieutenant Colonel Daniel J. Dell'Orto and Captain Maria C. Fernandez (on brief).

## Opinion of the Court

SULLIVAN, Judge:

On May 4, 1988, appellant was tried by a military judge sitting alone as a general court-martial at Darmstadt, Federal Republic of Germany. In accordance with his pleas, he was found guilty of conspiracy to commit false swearing and fraud; willful damage to military property, false swearing; and two specifications of larceny, in violation of Articles 81, 108, 134 and 121, Uniform Code of Military Justice, 10 USC §§ 881, 908, 934, and 921, respectively. Contrary to his pleas, he was found guilty of aggravated arson, in violation of Article 126, UCMJ, 10 USC § 926. He was sentenced to a bad-conduct discharge, confinement for 4 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority, acting pursuant to a pretrial agreement, approved the sentence as adjudged except for confinement exceeding 3 years. The Court of Military Review affirmed the findings and sentence in an unpublished opinion dated February 15, 1989.

We granted review of the following two issues of law:

### I

WHETHER APPELLANT'S CONFESSION SHOULD HAVE BEEN SUPPRESSED BECAUSE IT WAS TAKEN IN VIOLATION OF UCMJ ARTICLE 31(b).

### II

WHETHER APPELLANT'S CONFESSION SHOULD HAVE BEEN SUPPRESSED BECAUSE IT WAS TAKEN IN VIOLATION OF *EDWARDS V. ARIZONA* AND THE FIFTH AMENDMENT.

We hold that appellant's confession of September 24, 1987, was not taken in violation of the Fifth Amendment and *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), or Article 31, UCMJ, 10 USC § 831, and *United States v. Ravenel*, 26 MJ 344 (CMA 1988) (Everett, C.J.). *Cf. United States v. Applewhite*, 23 MJ 196 (CMA 1987); *see generally United States v. Lee*, 25 MJ 457, 460–61 (CMA 1988).

The military judge made the following findings concerning appellant's suppression motion:

The court finds the following facts: In September 1987 the Air Force OSI, Office of Special Investigations, conducted Behavior Analysis Interviews in an effort to determine who set fire to the Bitburg Air Base. A number of people to be interviewed was narrowed to approximately 295, to include Specialist Schake. Prior to the 18th of September, Specialist Schake was interviewed briefly, about 10 minutes. On the 18th of September, Specialist Schake was again interviewed. This time by Agent Collins. This was not a custodial interrogation, within the sense of *United States against Miranda, Tempia*.[1] Since one, Agent Collins was interviewing about 35 people in an effort to gain more information about who set the fires. Two, there existed no hard evidence linking anyone to the fires. And three, Specialist Schake was not a suspect, within the meaning of Article 31(b) of the Uniform Code of Military Justice.

During this interview the accused requested to see a lawyer. The accused was at that time being represented by Captain Wee on unrelated charges. The accused was not provided counsel. Subsequently, the accused was offered a polygraph exam. On 24 September, Specialist Schake was interviewed by Agents Taylor and Collins. Advised of his rights pursuant to Appellate Exhibit VII and IX, and waived those rights, and consented to the polygraph. He subsequently incriminated himself in regard to one of

1. *See United States v. Tempia,* 16 USCMA 629, 37 CMR 249 (1967).

the arson charges, Specification IV, of Additional Charge II.

In my view under Article 31, of the UCMJ, the accused has an absolute right to remain silent, and need not incriminate himself. During a custodial interrogation the accused has a right to have counsel present. However, in my view he has no right to counsel in a noncustodial interrogation. Since the accused asked for counsel in a noncustodial setting, in my opinion, the requirements of the *United States against Applewhite*, at 23 MJ 196, and the pertinent cases cited therein, are not applicable to this case. Under the unique circumstances of this case, Agent Collins could again approach the accused concerning a polygraph prior to counsel being made available to him. Therefore the motion to suppress is denied.

Are there any other motions at this time?

DC: Sir, is there any findings with regard to Specialist—the defense's assertion that Specialist Schake had stated to the polygrapher, Mr. Taylor, that he was represented by an attorney during the pre-polygraph interview?

MJ: Well—

DC: And that the definition of "suspect" as given to him by Special Agent Collins [a]ffected his understanding of his rights when he was later interviewed on the 24th of September.

MJ: In regard to your questions, Captain Wee, whether the accused told Mr. Taylor he was represented by a lawyer on other charges is, in my view, irrelevant. And there is no evidence that he told Mr. Taylor he was represented by a lawyer on the arson charges, and no evidence that the accused requested a lawyer. Further, I am satisfied the accused understood he was a suspect of aggravated arson within the meaning of Article 31, of the UCMJ.

DC: Your Honor, would you make a determination as to the Special Agent Taylor's actions in focusing Specialist Schake's attention away from the suspect of unrelated charges and the——

MJ: Captain Wee, let me tell you something. I don't mind answering your questions. I prefer to do them—if you have specific questions that you want on a ruling, for example, like special findings, then you should do that before I announce the ruling.

DC: Yes, your Honor.

MJ: I don't think it's a good—it's an arly [sic] process for me to give my ruling, and you ask me a series of questions, and expect an answer. All right?

DC: [No response.]

MJ: So, let me put it to you this way. If I haven't answered your questions, or if you feel that there are facts that I should find that are relevant to my ruling that I haven't included, then if you would write those out, and given them to me, I will respond to them. Okay?

\*       \*       \*       \*       \*       \*

I have before me what has been marked as Appellate Exhibit XI, which are questions submitted by Captain Wee, and I've indicated the answers to those questions on the exhibit. And I'm handing that to you now, Captain Wee, and Appellate Exhibit XI will be attached to the record of trial. Any further motions Captain Wee?

DC: No, your honor.

------

Appellate exhibit XI states these questions to the judge and his answers:

Whether the accused had a right to an attorney at any time prior to his incriminating statements to SA Taylor.

Yes—when advised of his rights to a lawyer

Whether the accused's statement to SA Taylor that he was pending other charges and had an attorney to represent him constituted an invocation of his right to an attorney with regard to the arson investigation. No.

Whether SA Taylor's efforts to focus the accused's attention away from the unrelated charges and his representa-

tion by an attorney constituted an effort to prevent or circumvent the invocation of the accused's right to an attorney. No.

If such efforts by SA Taylor are found to have existed, what effect do they have upon the accused's subsequent incriminating statements?

---------

## I

The challenged evidence in this case is the testimony of Special Agents Taylor and Collins that appellant orally admitted committing the arson charged in specification 4 of Additional Charge II. He made these incriminating admissions on September 24, 1987, to Agent Taylor after he failed a polygraph examination conducted by that agent, and he later repeated these admissions to Agent Collins. Prior to taking the polygraph examination, appellant was fully advised of his *Miranda-Tempia* rights, including advice that he was not required to take this examination. The polygraph examination covered his earlier exculpatory statement of September 18, 1987, which was made during an OSI Behavioral Analysis Interview in which he had denied starting the fire or knowing anything about it. At the end of this interview, appellant agreed to take a polygraph examination at

a later date. However, he had not been advised of his legal rights [2] at that time, and a request for counsel—which he made prior to agreeing to take the polygraph examination—was ignored by military investigators.

In view of the above, our preliminary concern is the Behavioral Analysis Interviews [3] of appellant conducted by the military criminal investigators on and before September 18, 1987. *Jacquin v. Stenzil*, 886 F.2d 506, 508 (2d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3236, 111 L.Ed.2d 747 (1990). This investigatory technique is clearly a form of police interrogation, especially when it entails direct questioning about an interviewee's involvement in a crime. *See generally* F. Inbau, J. Reid, and J. Buckley, *Criminal Interrogation and Confessions* (hereafter cited as Inbau) 236–37, 302 (3d ed. 1986). Moreover, it can be employed in circumstances which may justify its characterization as custodial interrogation for purposes of *Miranda*. Inbau, *supra* at 60.[4] Finally, even absent custodial circumstances, if the interviewing investigator suspects or reasonably should suspect the interviewee of a crime, then rights warnings under Article 31 are required. *See United States v. Lee,*

---

2. Agent Collins testified that this was because "we still considered Specialist Schake as a suspect, and not a subject." (R. 16) Article 31 of the Code, 10 USC § 831, requires warnings for "an accused or a person *suspected* of an offense." (Emphasis added.) Thus, the agent had the requirement for warnings *backwards*.

3. F. Inbau, J. Reid, and J. Buckley, *Criminal Interrogation and Confessions* (hereafter Inbau) (3d ed. 1986), states:

Subsequent to the above-described initial procedures, the interrogator should embark upon a *behavioral analysis interview*, which consists of asking: 1) standard investigative questions, such as the suspect's relationship with the victim, his whereabouts prior to and at the time of the crime, as well as thereafter, the nature of their last visit and other relevant matters; and 2) selected questions designed to evoke *verbal and nonverbal* responses that will be helpful in making a tentative determination as to whether the suspect is lying or telling the truth.

THE BEHAVIORAL ANALYSIS INTERVIEW
Although standard investigative questions are for the primary purpose of obtaining information rather than to evoke responses for behavior analysis, the responses should nevertheless be given analytical consideration. In other words, the interrogator should look for clues of truth or deception from the very outset of the interview. This should be done in accordance with the guidelines presented in the first section of this chapter regarding the need for acute observations. *The core of behavior analysis, however, is the asking of noninvestigative questions that are specifically designed to evoke behavioral responses.*
*Id.* at 62–63 (emphasis in 2d para. added).

4. A key concern for civilian criminal investigators is the procedure by which they arrange for a suspect to be available for interrogation. *See* Inbau, *supra* at 211. The military criminal investigators relied on the commander's purported authority to order his soldiers to cooperate in the investigation.

25 MJ at 460–61; *United States v. Morris*, 13 MJ 297, 298 (CMA 1982) (Fletcher, J.).

■ The first problem in this case is the judge's finding that appellant was not in custody or subject to custodial interrogation during the interview of September 18, 1987, at the OSI office. *Cf. United States v. Brabant*, 29 MJ 259, 262–63 (CMA 1989); *United States v. Fassler*, 29 MJ 193, 197 (CMA 1989). This is largely a question of fact, although the ultimate conclusion is a legal one. *See United States v. Schneider*, 14 MJ 189, 194–95 n.6 (CMA 1982). The military judge justified his finding of no custody by stating:

> [O]ne, Agent Collins was interviewing 35 people in an effort to gain more information about who set the fires. Two, there existed no hard evidence linking anyone to the fires. And three, Specialist Schake was not a suspect, within the meaning of Article 31b of the Uniform Code of Military Justice.

This legal ruling was plainly erroneous.

The Court of Appeals for the Eighth Circuit recently commented on the custody requirement for *Miranda* warnings:

> We agree with Carter's contention that *Miranda* warnings should have been given earlier in the questioning than they were. The warnings must be given before interrogation begins when a suspect is taken into custody or otherwise significantly deprived of his freedom of action. *Miranda [v. State of Arizona]*, 384 U.S. [436] at 444, 467, 86 S.Ct. [1602] at 1624 [1624, 16 L.Ed.2d 694 (1966)]; *Berkemer v. McCarty*, 468 U.S. 420, 429, 104 S.Ct. 3138, 3144–45, 82 L.Ed.2d 317 (1984). *In determining whether a suspect is "in custody," the "relevant inquiry is how a reasonable man in the suspect's position would have understood his situation."* *Berkemer*, 468 U.S. at 442, 104 S.Ct. at 3151. *The test is not merely whether Carter believed he was free to leave; rather, we must determine whether he reasonably believed that his "freedom of action [was] curtailed to a 'degree associated with formal arrest.'"* *Id.* at 440, 104 S.Ct. at 3150 (quoting

*California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam)); *United States v. Streifel*, 781 F.2d 953, 961 (1st Cir. 1986); W. R. LaFave & J. H. Israel, 1 *Criminal Procedure* § 6.6, at 75 (Supp. 1989). Our conclusion concerning custody must arise from an examination of the totality of the circumstances. *United States v. Lanier*, 838 F.2d 281, 285 (8th Cir.1988) (per curiam). We review the district court's determination on this issue under the "clearly erroneous" test, and "must affirm unless the decision of the district court is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." *United States v. Jorgensen*, 871 F.2d 725, 728 (8th Cir. 1989) (clearly erroneous standard applied to motions to suppress; custody issue reviewed along with other issues).

*United States v. Carter*, 884 F.2d 368, 370 (8th Cir.1989) (emphasis added). The circumstances cited by the military judge in his ruling focused only on the agent's state of mind. Accordingly, his ruling was erroneous because it ignored the state of mind of a reasonable soldier in appellant's position. *Id.* at 370–71. *See Medeiros v. Shimoda*, 889 F.2d 819, 822–23 (9th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3219, 110 L.Ed.2d 666 (1990).

The Court of Military Review, however, also found as a matter of fact and law that appellant was not in custody on September 18, 1987, during this police interview. It said:

> We find the military judge's rulings that the appellant was not in custody correct in law and in fact. *California v. Beheler*, 463 U.S. 1121 [103 S.Ct. 3517, 77 L.Ed.2d 1275] (1983) (the ultimate inquiry to determine whether there is custodial interrogation requiring *Miranda* warnings is whether there is formal arrest or restraint of freedom of movement of the degree associated with a formal arrest). *See Oregon v. Mathiason*, 429

U.S. 492, 495 [97 S.Ct. 711, 714, 50 L.Ed.2d 714] (1977) (a noncustodial situation is not converted into a custodial one simply because the questioning takes place in a coercive environment). Unpub. op. at 2. We note that appellant's questioning on the above date was at the office of the OSI, and he was not informed that he could leave at any time or that he need not cooperate in this interview. *Cf. Oregon v. Mathiason, supra.* However, the interview on the 18th of September and the one earlier were of short duration, and no physical or verbal direction was provided to appellant that he could not leave. *See Campaneria v. Reid,* 891 F.2d 1014, 1020–21 n.1 (2d Cir.1989). In this context, we are not inclined to upset the determination of the court below that no custodial interrogation occurred. *See United States v. Carter, supra.*

■ In any event, assuming appellant was subjected to custodial interrogation on September 18, 1987, we nonetheless hold that his later confession on September 24, 1987, was not barred by *Edwards v. Arizona, supra.* Admittedly, his request for counsel on the 18th of September was unequivocal. *See United States v. Browne,* 891 F.2d 389, 394–95 (1st Cir.1989); *cf. United States v. Eaton,* 890 F.2d 511, 513–14 (1st Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1927, 109 L.Ed.2d 291 (1990); *Delap v. Duggar,* 890 F.2d 285, 293–95 (11th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 2628, 110 L.Ed.2d 648 (1990). Moreover, his rights under *Edwards v. Arizona, supra,* were violated when military police investigators ignored his request and asked him to take a polygraph examination while still in custody. *See United States v. Applewhite,* 23 MJ at 198; *People v. Johnson,* 671 P.2d 958, 962 (Colo.1983), *on remand suppression aff'd,* 681 P.2d 524–25 (Colo.1984). *Cf. Wyrick v.*

*Fields,* 459 U.S. 42, 47, 103 S.Ct. 394, 396, 74 L.Ed.2d 214 (1982). *See generally* Inbau, *supra* at 238, 305. Yet, these facts alone do not dictate that his subsequent statements on September 24, 1987, should be suppressed. *Dunkins v. Thigpen,* 854 F.2d 394 (11th Cir.1988), *cert. denied,* 489 U.S. 1059, 109 S.Ct. 1329, 103 L.Ed.2d 597 (1989).

In deciding that suppression is not necessary, we first note that appellant was released from the police station and allowed unrestricted freedom of movement from September 18 until September 24, 1987. This 6–day break in continuous custody dissolved appellant's *Edwards* claim. *Dunkins v. Thigpen, supra* at 397 (and cases cited therein); *People v. Trujillo,* 773 P.2d 1086, 1092 (Colo.1989). *See generally Butler v. McKellar,* — U.S. —, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990). The opinion of this Court in *United States v. Applewhite, supra* at 199, does not dictate a contrary conclusion. There, evidence concerning "the operation of the local Trial Defense Service" suggested such a release was pretextual or largely ineffective. *Id.* at 199. *See also United States v. King,* 30 MJ 59 (CMA 1990). Here appellant was actually represented by counsel on another charge at the time of his release, and it cannot otherwise be said that his release did not provide him a real opportunity to seek legal advice.[5] *See Dunkins v. Thigpen* and *People v. Trujillo,* both *supra.* Finally, when he returned to the station on September 24, 1987, appellant was fully advised of his *Miranda–Tempia* rights, as well as his right to refuse to take the polygraph examination.

## II

■ Appellant also asserts that he was a suspect[6] prior to [4] the September 18,

---

5. Defense argued at trial that appellant's counsel was several hours away, and he submitted a request for an appointment through his unit which was set up for 2 days after the polygraph examination. These circumstances do not suggest to us that he was unable to contact counsel during this period in some fashion.

6. Agent Collins described appellant as a "suspect" until it was affirmatively shown that he did not start the fire. He became a "subject" in this same agent's mind when he offered appellant the opportunity to take a polygraph examination, which occurred after the latter exercised his right to counsel. We conclude that appel-

1987, interview and that the failure of the military criminal investigators to provide him with Article 31 warnings "presumptively tainted" his later confession on September 24, 1987. *See United States v. Ravenel,* 26 MJ at 347. He further contends that the Government has not adequately rebutted this "presumptive taint" and, therefore, that his subsequent confession was inadmissible. *See United States v. Ravenel,* 26 MJ at 347–51.

We note, however, that the doctrine of presumptive taint for Article 31 violations espoused by Chief Judge Everett in *United States v. Ravenel, supra,* has not gained the support of a majority of this Court. *United States v. Spaulding,* 29 MJ 156, 162 (CMA 1989) (Cox, J., concurring); *see United States v. Sangineto–Miranda,* 859 F.2d 1501, 1516–18 (6th Cir.1988); *see generally Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). Moreover, we doubt that this doctrine, even as espoused by Chief Judge Everett, includes this case. Here, appellant made no incriminating admissions as a result of his initial unwarned questioning, and he received proper rights advice before his September 24 admissions. *See United States v. Byers,* 26 MJ 132, 135 (CMA 1988). *Cf. United States v. Ravenel, supra* at 347, 350.

Finally, even under Chief Judge Everett's test, we find any taint or presumption thereof was sufficiently rebutted in this case. *United States v. Ravenel, supra* at 351. First, there was no need for the normal cleansing advice that appellant's prior unwarned statements could not be used against him. There simply was no cat "let ... out of the bag" on September 18, 1987,

see *United States v. Spaulding, supra* at 162 n.2 (Cox, J., concurring), or during the earlier interview. Second, although appellant had agreed on September 18, 1987, to take a polygraph, he was also advised on September 24, 1987, that he was not then required to submit to the polygraph examination which was about to be given to him. Third, a different investigator, Agent Taylor, conducted the polygraph examination and initially adduced the incriminating admission. Fourth, and most important, 6 days passed between his unwarned interview and his ultimate admission, during which time he was completely free to acquire new counsel for the arson charge or consult the counsel then representing him on the other alleged offense. *See United States v. Patino,* 862 F.2d 128, 132–34 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 2072, 104 L.Ed.2d 637 (1989). Any taint from a failure to provide Article 31 advice to appellant on September 18, 1987, was clearly purged by the time of his later admissions on September 24, 1987.

The decision of the United States Army Court of Military Review is affirmed.

Judge COX concurs.

EVERETT, Chief Judge (concurring in the result):

On September 18, 1987, appellant was a "suspect" of arson; nonetheless, an agent of the Office of Special Investigations (OSI) questioned him without giving an Article 31(b), Uniform Code of Military Justice, 10 USC § 831(b), warning. Moreover, some of the evidence indicates that this interrogation was "custodial"; but no *Miranda*[1] *warning was given.*[2]

---

lant was a suspect within the meaning of Article 31 at the beginning of the identification interview on September 18, 1987. *See United States v. Morris,* 13 MJ 297–98 (CMA 1982) (Fletcher, J.), citing *United States v. Anglin,* 18 USCMA 520, 523–24, 40 CMR 232, 235–36 (1969).

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See* n.1, *supra* of the majority opinion for a case discussing the *Miranda* warnings regarding servicemembers.

2. The military judge found that the questioning was not "custodial." However—as the majority recognizes—this finding was vitiated by the judge's failure to consider whether a reasonable soldier in Schake's position would have believed that he was in custody. In my opinion, the finding by the Court of Military Review on appeal that the interrogation was not custodial is an inadequate substitute for the finding at the trial level, where the factfinder can observe the witnesses. Thus, I believe a hearing pursuant to *United States v. DuBay,* 17 USCMA 147, 37 CMR

Obviously, any statement made by appellant under these circumstances was inadmissible. Moreover, in my view, the violation of appellant's rights in obtaining this statement on September 18 raised a question as to admissibility of any statements he made later. *See United States v. Ravenel,* 26 MJ 344 (CMA 1988).

The real question here is whether the court-martial properly received in evidence oral admissions made by appellant on September 24, shortly after he had taken and failed a polygraph examination. Important in answering this question is the fact that the earlier statement on September 18 was exculpatory.

Schake denied starting the fire or knowing anything about it. Certainly this denial did not subject him to the same pressure to confess later that he would have been under if he had "let the cat out of the bag" and confessed to a crime. *See United States v. Spaulding,* 29 MJ 156, 160 (CMA 1989). Indeed, the denial would have created pressure to confess only if we assume that someone who has talked to the police on one occasion will be hesitant to refuse to talk to them about the same matter later. I cannot accept such a general assumption.

During the interview on September 18, Schake also agreed to be polygraphed at a later time. Like a consent for a search, an agreement to be polygraphed has no testimonial quality. If anything, it could be construed as an assertion of innocence. Once again, the only possibility of subtle psychological pressure on Schake is that, having once agreed to a polygraph interview, he may have felt inhibited from repudiating that agreement at a later time.

The defense also asserts in its brief that Schake "would not have been chosen for further interrogation and the polygraph

but for the information developed in the previous interview." Although this contention gives me pause, I do not believe that it requires excluding the statement made on September 24. In my view, the doctrine of "presumptive taint" is concerned with circumstances that have a bearing on a suspect's willingness to make a statement. *Cf. United States v. Ravenel, supra* at 347–50. Illegal police action which leads investigators to target a suspect usually will not affect admissibility of a subsequent statement by the suspect, unless that illegal action would have in some way created a pressure for him to make a statement. Targeting Schake for further questioning—even if it resulted from the earlier questioning—was, in my view, immaterial to admissibility of the statement on September 24.

My final concern arises from the military judge's finding that, on September 18, Schake made a request for counsel. Under these circumstances—if the interrogation was "custodial"—the questioning should have ended at once and not been resumed until and unless "initiated" by Schake.

However, does this request for counsel on September 18 carry over until the subsequent polygraph interview, which was preceded by appropriate warnings? I conclude that the absence of custody during this interval and the opportunity for Schake to consult an attorney were sufficient to take the case outside the purview of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)—as well as to negate the "presumptive taint" to which I adverted in *United States v. Ravenel, supra.*

Therefore, I join in affirming the decision of the Court of Military Review upholding appellant's conviction.

---

411 (1967), would be necessary to establish that the interrogation of Schake was not "custodial."

Accordingly, I have proceeded on the premise that the interrogation was "custodial."